IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026,

    Plaintiff,

v.

ASAHI TEC CORPORATION,
547-1 Horinuochi
Kikugowa City, Shizuoka, Japan 439-8651,

    Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiff, Pension Benefit Guaranty Corporation ("PBGC"), by and through its undersigned attorneys, for its Complaint against Defendant Asahi Tec Corporation ("Asahi Tec" or "Defendant") alleges as follows:

1. This action arises under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461 (2006 and Supp. II 2008). PBGC seeks entry of judgment against Asahi Tec, a "controlled group" member of Metaldyne Corporation (n/k/a Oldco M Corporation) ("Metaldyne"), the contributing sponsor of the Metaldyne Corporation Pension Plan (the "Pension Plan") for: (1) liability arising under 29 U.S.C. § 1362 for the termination of the Pension Plan, in the approximate amount of $135,200,000, plus interest accrued thereon from July 31, 2009, to the date of payment; (2) liability arising under 29 U.S.C. §§ 1306(a)(7) and 1307 for termination premiums in the

approximate amount of $40,391,250, plus interest accrued from August 1, 2009, to the date of payment; and (3) reimbursement of PBGC's costs of this action under 29 U.S.C. § 1303(e)(5).

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this action, without regard to the amount in controversy, pursuant to 29 U.S.C. §§ 1303(e) and 1368. This Court also has subject matter jurisdiction, without regard to the amount in controversy, pursuant to 28 U.S.C. §§ 1331, 1332 and 1345. This action arises under U.S. law, is between a citizen of a State and a citizen or subject of a foreign state, and is brought by an agency or officer of the U.S. authorized to sue by Act of Congress.

3. Venue in this district is proper under 29 U.S.C. § 1303(e)(2) and 28 U.S.C. §§1391 and 1392.

## Parties

4. Plaintiff PBGC is a wholly owned United States government corporation established under 29 U.S.C. § 1302 to administer and enforce the provisions of the pension plan termination insurance program under Title IV of ERISA.

5. Defendant Asahi Tec is a corporation organized under the laws of Japan that maintains its head office at 547-1 Horinouchi, Kikugowa City, Shizuoka, Japan 439-8651. At all relevant times, Asahi Tec directly or indirectly owned 100% of the stock of Metaldyne and therefore was a member of Metaldyne's controlled group, within the meaning of 29 U.S.C. § 1301(a)(14).

6. Upon information and belief, Asahi Tec has been doing business in the U.S. at all relevant times, directly or through corporate agents or alter egos and is therefore subject to general jurisdiction in this Court. Indeed, Asahi Tec has previously admitted in litigation in the U.S. that it is doing business in the U.S. and is subject to general jurisdiction here. Asahi Tec is

also subject to specific jurisdiction for the claims asserted herein because they arise out of actions Asahi Tec purposefully directed to the U.S., including but not limited to the acquisition and control of a U.S. company while on notice that it sponsored an underfunded pension plan subject to ERISA.

## Background

### Pension Liability of a Controlled Group Member Under Title IV of ERISA

7. Under 29 U.S.C. § 1362(a) and (b), each person who is, on the plan termination date, a contributing sponsor of a pension plan covered under Title IV of ERISA, as that term is defined in 29 U.S.C. § 1301(a)(13), or a member of the contributing sponsor's controlled group, incurs joint and several liability to the PBGC for the total amount of the plan's unfunded benefit liabilities, as that term is defined in 29 U.S.C. § 1301(a)(18) and 29 C.F.R. § 4062.3(a), plus interest ("Pension Liability").

8. Under 29 U.S.C. §§ 1303(e)(6), PBGC may collect the liabilities imposed pursuant to 29 U.S.C. §§ 1362 by commencing a civil action within six years of the plan termination date.

9. Under 29 U.S.C. §§ 1306(a)(7)(A) and 1307(e), if an underfunded pension plan terminates under 29 U.S.C. § 1342, the contributing sponsor of the plan and each member of the contributing sponsor's controlled group is liable for a termination premium of $1,250 per participant for each of the three consecutive 12-month periods beginning with the first month following the month in which termination occurs.

### Through Asahi Tec's Acquisition of Metaldyne in the United States, Asahi Tec Became Jointly and Severally Liable for Metaldyne's Pension Liability

10. On or about September 1, 2006, Asahi Tec announced that Metaldyne, a leading global automotive supplier, would become a wholly owned subsidiary of Asahi Tec through a

3

...

cash-out merger in the U.S. Under this transaction, Asahi Tec established a wholly owned subsidiary in the U.S. for purposes of the acquisition of Metaldyne and agreed to pay Metaldyne's then-existing shareholders over $200 million U.S. dollars for their interest in Metaldyne stock. Asahi Tec announced that the total consideration for the acquisition, including the refinancing of Metaldyne's existing interest-bearing debt, would be approximately $1.2 billion U.S. dollars.

11. Upon information and belief, Asahi Tec performed due diligence in connection with this $1.2 billion transaction to assess the financial impact of the Metaldyne acquisition upon Asahi Tec. Upon information and belief, one aspect of that due diligence involved Asahi Tec's obligation for pension liabilities of Metaldyne. Upon information and belief, Asahi Tec learned about the Pension Plan, that the Pension Plan had unfunded benefit and other pension-related liabilities and that, as a member of Metaldyne's controlled group, it would be jointly and severally liable with Metaldyne and other affiliates, for the Pension Liability under the Pension Plan.

12. Asahi Tec determined to pursue the Metaldyne acquisition transaction in the U.S., notwithstanding these Pension-Plan-related liabilities, for the announced purpose of gaining access to Metaldyne's U.S. engineering, design, and manufacturing capabilities and to expand its global reach with Metaldyne's significant operations, presence, and customer base in the U.S. and elsewhere.

13. Asahi Tec completed its cash-out merger on or about January 2007, and acquired 100% of the stock of Metaldyne. Upon information and belief, following the merger, Asahi Tec controlled and directed Metaldyne's operations and made Metaldyne its agent and alter ego to do business in the U.S. Upon information and belief, Asahi Tec pursued its goals of gaining access

to Metaldyne's engineering, design, and manufacturing capabilities and expanding its global reach with Metaldyne's significant operations, presence, and customer base in the U.S. and elsewhere. Upon information and belief, Asahi Tec solicited customers and otherwise conducted continuous and systematic business activities in the U.S. using Metaldyne as its agent and alter ego.

14. At all relevant times following Asahi Tec's acquisition, Thomas A. Amato acted as co-CEO of Asahi Tec and a member of its Board as well as CEO, Chairman, and President (since February 2009) of Metaldyne. Under its *Plan to Win*, Asahi Tec pursued a strategy in the U.S. of capitalizing and restructuring Metaldyne to create value for Asahi Tec. By October 30, 2008, Asahi Tec began capitalizing a cash tender offer for 100% of Metaldyne's bonds, retiring approximately $360 million U.S. dollars of debt in 2008. Upon information and belief, Asahi Tec dominated and controlled Metaldyne's operations in the U.S., including Metaldyne's capitalization and attempted restructuring.

**Asahi Tec's Joint and Several Pension Liability Matured Upon Termination of the Pension Plan**

15. As wholly owned subsidiaries acting under the direction of Asahi Tec's co-CEO, Metaldyne and 30 of its direct and indirect subsidiaries filed voluntary petitions for relief as debtors-in-possession under chapter 11 of title 11 of the United States Bankruptcy Code ("the Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases") on May 27, 2009. Mr. Amato continued to act as CEO, Chairman, and President of Metaldyne in its Bankruptcy Cases, while acting as co-CEO and director of Asahi Tec.

16. On July 31, 2009, PBGC filed a complaint under 29 U.S.C. § 1342 against Metaldyne in the United States District Court for the Eastern District of Michigan, seeking a

decree terminating the Pension Plan, appointing PBGC as statutory trustee of the Pension Plan, establishing July 31, 2009, as the termination date of the Pension Plan, and requiring that Pension Plan records be turned over to PBGC. Prior to initiating this termination action, PBGC discussed the Pension Plan with Asahi Tec's U.S. counsel, O'Melveny & Myers. PBGC discussed Asahi Tec's controlled group liability for the Pension Plan and requested that Asahi Tec assume sponsorship of the Pension Plan, given the fact that no buyer of Metaldyne's assets was expected to assume the Pension Plan in the Bankruptcy Cases. Asahi Tec refused to assume sponsorship of the Pension Plan, necessitating termination of the Pension Plan.

17. On August 31, 2009, PBGC and Metaldyne, on behalf of itself and other Metaldyne debtors and current subsidiaries, entered into an Agreement for Appointment of Trustee and Termination of Plan under which the Pension Plan was terminated effective as of July 31, 2009, and PBGC became the statutory trustee thereof pursuant to section 4042(c) of ERISA. Thereafter, PBGC filed a notice of voluntary dismissal of its complaint in the United States District Court for the Eastern District of Michigan.

18. On September 18, 2009, PBGC sent a letter to Masataka Matsumura, Chief Financial Officer of Asahi Tec (with a courtesy copy to Asahi Tec's U.S. Counsel, O'Melveny & Myers LLP), stating that "[n]ow that the [Pension] Plan has terminated, PBGC's contingent liability for unfunded benefits has been matured" and that Asahi Tec, as a controlled group member, is liable for the Pension Liability ("PBGC Demand Letter"). Notwithstanding the PBGC Demand Letter, to date, Asahi Tec has neglected or knowingly refused to pay PBGC the Pension Liability.

### First Claim for Relief

19. PBGC realleges and hereby incorporates by reference all allegations set forth in paragraphs 1 through 18 of this Complaint.

20. The Pension Plan was a single-employer plan within the meaning of 29 U.S.C. § 1301(a)(15) established by Metaldyne for certain of its employees. The Pension Plan was determined to be tax-qualified under section 401(a) of the Internal Revenue Code and therefore covered by the pension plan termination insurance program in Title IV of ERISA.

21. Sections 1362(a) and (b) of ERISA impose Pension Liability upon the contributing sponsor of a pension plan covered by Title IV of ERISA and the members of its controlled group, jointly and severally, if, upon termination of the pension plan, the plan assets are insufficient to provide for the benefit liabilities under the plan. 29 U.S.C. § 1362(a), (b). Under section 1362(b)(1)(A) of ERISA, the amount of the Pension Liability is the total amount of the unfunded benefit liabilities as of the termination date of the plan together with interest calculated from the termination date in accordance with PBGC's regulations. 29 U.S.C. § 1362(b)(1)(A).

22. As of July 31, 2009, the Pension Plan's termination date, Asahi Tec, a controlled group member of the Pension Plan sponsor, was jointly and severally liable for the Pension Liability in the approximate amount of $135,200,000, plus accrued interest from July 31, 2009, to date of payment, calculated in accordance with 29 C.F.R. § 4062.7.

23. To date, no amount of Pension Liability stated in Paragraph 22 has been paid by or on behalf of Asahi Tec, Metaldyne, or any controlled group member. By filing this Complaint, PBGC seeks entry of judgment against Asahi Tec for the full principal amount of the Pension Liability under 29 U.S.C. § 1303(e)(1) and 1362(b), which includes interest in accordance with 29 C.F.R. § 4062.7, accruing until payment.

## Second Claim for Relief

24. PBGC realleges and hereby incorporates by reference all allegations set forth in paragraphs 1 through 23 of this Complaint.

7

25. On July 30, 2009, the day before the Pension Plan's termination date, the Pension Plan had benefit liabilities with respect to 10,771 participants.

26. Under 29 U.S.C. §§ 1306(a)(7) and 1307(e)(2), Asahi Tec is jointly and severally liable for termination premiums in the amount of $13,463,750 for each of the first three consecutive twelve-month periods beginning August 1, 2009. Each installment of the termination premium is due within 30 days after the beginning of each twelve-month period. 29 U.S.C. § 1306(a)(7)(D)(i)(I).

### Third Claim for Relief

27. PBGC realleges and hereby incorporates by reference all allegations set forth in paragraphs 1 through 26 of this Complaint.

28. PBGC will devote substantial time and expense to the pursuit and presentation of its claims in this action. Under 29 U.S.C. § 1303(e)(5), the court may award PBGC all or a portion of its costs of litigation incurred in any action. PBGC seeks such costs in connection with the pursuit and presentation of its claims in this action.

**WHEREFORE,** Plaintiff PBGC respectfully requests that this Court:

1. With respect to its First Claim for Relief, enter judgment in its favor and against Asahi Tec in the approximate amount of $135,200,000, plus additional interest accruing from July 31, 2009, until date of payment, at the rates established under 26 U.S.C. §§ 6601(a), 6621, and calculated in accordance with 29 C.F.R. § 4062.7(a), (c);

2. With respect to its Second Claim for Relief, enter judgment in its favor and against Asahi Tec for each installment of the termination premium in the approximate amount of $13,463,750, together with accrued interest from the due date until the date of payment, at the

rates established under 26 U.S.C. §§ 6601(a), 6621, and calculated in accordance with 29 C.F.R. § 4062.7(a), (c);

3. Award PBGC all of its costs of litigation in this case pursuant to 29 U.S.C. § 1303(e)(5);

4. Award such other and further relief as shall be just and proper.

Dated: November 12, 2010

HUGHES HUBBARD &REED LLP

By: *(signature)*
DENNIS S. KLEIN (D.C. Bar No. 361457)
JAMES H. BOYKIN (D.C. Bar No. 490298)
1775 I Street, N.W.
Washington, DC  20006-2401
Phone:  (202) 721-4600
Fax:  (202) 721-4646
e-mail:  boykin@hugheshubbard.com

*(signature)*
ISRAEL GOLDOWITZ (D.C. Bar No. 291120)
Chief Counsel
KAREN L. MORRIS (D.C. Bar No. 419786)
Deputy Chief Counsel
JAMES L. EGGEMAN (D.C. Bar No. 429289)
Assistant Chief Counsel
RALPH L. LANDY
Attorney
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Phone:  (202) 326-4020
Fax:  (202) 326-4112
e-mail:  landy.ralph@pbgc.gov

Attorneys for Plaintiff, Pension Benefit
  Guaranty Corporation

Of Counsel:

HUGHES HUBBARD & REED LLP
DEREK J.T. ADLER, Esq.
DANIEL S. LUBELL, Esq.
One Battery Park Plaza
New York, NY 10004
Phone: (212) 837-6000
Fax: (212) 422-4726
e-mail: lubell@hugheshubbard.com